```
1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
2
                     Case No. 11-60228-CR-HURLEY
3


4    UNITED STATES OF AMERICA,  )
                                )
5             Plaintiff,        )
                                )
6         -v-                   )
                                )
7    DEYVI ORANGEL PENA ARTEAGA,)
     a/k/a Jose Luis Alvarez,   )
8                               )
              Defendant.        )   West Palm Beach, Florida
9                               )   March 14, 2012
     _____)   2:10 p.m.
10


11                  TRANSCRIPT OF PLEA PROCEEDINGS

12            BEFORE THE HONORABLE DANIEL T. K. HURLEY

13                     U.S. DISTRICT JUDGE

14   Appearances:

15

     For the Government:          BERTHA R. MITRANI
16                                Assistant United States Attorney
                                  500 East Broward Boulevard
17                                Fort Lauderdale, Florida  33301

18   For the Defendant:           LAW OFFICE OF BENEDICT KUEHNE, PA
                                  BY:  BENEDICT P. KUEHNE, ESQ.
19                                BY:  SUSAN DMITROVSKY, ESQ.
                                  Miami Tower, Suite 3550
20                                100 SE 2nd Street
                                  Miami, FL 33131-2154
21

22

23
     Reporter:                    Karl Shires, RPR, FCRR
24   (561) 514-3728               Official Court Reporter
                                  701 Clematis Street, Suite 258
25                                West Palm Beach, Florida  33401
```

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1          (Call to Order of the Court.)

 2          THE COURT:  Ladies and gentlemen, the next matter

 3  before the Court is Case Number 11-60228.  This is the case of

 4  the United States of America versus Mr. Deyvi Orangel Pena

 5  Arteaga, who is also known as from Jose Luis Alvarez.

 6          Let me begin by allowing the lawyers to make their

 7  appearances, and I'm going to start by recognizing counsel for

 8  the government.

 9          MS. MITRANI:  Good afternoon, Your Honor.  Martha

10  Mitrani on behalf of the United States.

11          THE COURT:  Let me turn now, if I might, to counsel

12  for the defense.

13          MS. DMITROVSKY:  Good afternoon, Your Honor.  Susan

14  Dmitrovsky on behalf of Mr. Pena.

15          THE COURT:  Ms. Dmitrovsky and Ms. Pena, good

16  afternoon.

17          It is my understanding that there have been

18  discussions on behalf of Mr. Pena with the government and that

19  as a result of those discussions Mr. Pena has come to court

20  today deciding and wishing to change his plea from a plea of

21  not guilty to a plea of guilty; is that correct?

22          THE DEFENDANT:  Yes.

23          MS. DMITROVSKY:  Yes, Judge.

24          THE COURT:  Mr. Pena, would you be good enough to come

25  to the lecturn together with counsel, and I'm going to ask
```

1    Mr. Caldwell if he would administer the oath to you.

2         (The Defendant was duly sworn.)

3              THE COURT:  Mr. Pena, would you state your full name

4    for the record, sir?

5              THE DEFENDANT:  Deyvi Orangel Pena Arteaga.

6              THE COURT:  And do use "Pena" as the surname that

7    you're normally referred to by people?

8              THE DEFENDANT:  Yes.

9              THE COURT:  The device in the middle of that lecturn

10   is actually a microphone.  So if you could move into the

11   middle, and I'm going to ask you to please speak up loudly so

12   our court reporter is able to hear you.

13             Mr. Pena, do you understand that by taking the oath

14   that you have just taken that you have promised now to answer

15   all of the questions truthfully?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  Do you also understand that if you were

18   not truthful, that you run the risk of being charged with

19   another crime, the crime of perjury or the crime of giving a

20   false statement while under oath?

21             Do you understand that too?

22             THE DEFENDANT:  I do.

23             THE COURT:  Let me suggest that what you want to do is

24   first just relax, listen carefully to the questions, and simply

25   go ahead and answer them as accurately and as completely as you

1   can.

2          I hope you understand that no one wants you to plead

3   guilty unless, number one, you really did whatever it is the

4   government is claiming and, second -- and I think this is just

5   as important -- you should not plead guilty unless you've come

6   to the firm conclusion in your own mind that it is in your best

7   interest to resolve the case this way.

8          Now, if there's anything at all that I say that you

9   don't understand or if there is something that you would like

10  to discuss in greater detail, I want you to please feel free to

11  stop me and let me know, and we can have that discussion.

12         And by the way, if in the course of our discussion if

13  you need to talk to Ms. Dmitrovksy privately, you let me know

14  and I'm going to give you that opportunity as well.   Okay?

15         THE DEFENDANT:   Yes.

16         THE COURT:   I would like to begin by asking you about

17  your representation by Mr. Kuehne and Ms. Dmitrovsky.

18         Did you or your family retain them or did the Court

19  appoint them and ask them to assist you in this case?

20         THE DEFENDANT:   I did.

21         THE COURT:   Good.   Now, have you met with your

22  lawyers, both Mr. Kuehne and Ms. Dmitrovsky --

23         May I ask, Ms. Dmitrovsky, have you entered an

24  appearance in the case?

25         MS. DMITROVSKY:   Oh, yes, Judge, I have.

```
 1              THE COURT:  And you're representing Mr. Pena along
 2   with Mr. Kuehne?
 3              MS. DMITROVSKY:  Exactly.
 4              THE COURT:  Good.
 5              MS. DMITROVSKY:  Mr. Kuehne's co-counsel on this case.
 6              THE COURT:  Fine.
 7              Now, Mr. Pena, have you met with Mr. Kuehne and
 8   Ms. Dmitrovsky and reviewed with them in detail the charges
 9   that the Government brought against you in this case?
10              THE DEFENDANT:  Yes, I did.
11              THE COURT:  And when you were having those
12   discussions, did you talk about if there were to be a trial
13   what the evidence might be at that trial and what you could do
14   to defend yourself in light of that evidence?
15              Did you talk about that?
16              THE DEFENDANT:  Yes.  Yes.
17              THE COURT:  Okay.  Now, I have a document in front of
18   me that called a plea agreement, and on the very first page, of
19   course, it says, John Doe, also known as Jose Luis Alvarez, and
20   then if you go to the last page there's a signature line, but
21   it is your name as Mr. Pena Arteaga, and there is a signature
22   above that.
23              Mr. Pena, is that your signature?
24              THE DEFENDANT:  Yes, sir.
25              THE COURT:  How, before you signed this document did
```

```
1   you go over every single provision in this document with either

2   Mr. Kuehne or Ms. Dmitrovsky?

3           THE DEFENDANT:  Yes, I did.

4           THE COURT:  Now, there's a second document today and

5   it is called a factual proffer.  This document also has your

6   present name, that is, Deyvi Pena and so on, and the other name

7   of John Doe and Jose Luis Alvarez.  It contains a set of

8   statements, factual statements.  And then, of course, on the

9   very last page your name is typewritten again and there is a

10  signature above that.

11          Again, sir, is that your signature?

12          THE DEFENDANT:  Yes, it is.

13          THE COURT:  Now, may I ask you, before you signed this

14  document did you go over every single factual statement in this

15  document with Mr. Kuehne or Ms. Dmitrovsky?

16          THE DEFENDANT:  Yes, I did.

17          THE COURT:  And are all the factual statements in this

18  document, the factual proffer, are they true and accurate?

19          THE DEFENDANT:  Yes, they are.

20          THE COURT:  Finally, may I ask you, are you satisfied

21  with the advice and with the services that Mr. Kuehne and

22  Ms. Dmitrovsky have provided to you while they have acted as

23  your lawyers in this case?

24          THE DEFENDANT:  Yes, I am.

25          THE COURT:  Good.
```

```
 1              Now, I wonder if you could tell me just a little bit

 2    about yourself, sir.

 3              How old are you today?

 4              THE DEFENDANT:  I'm 50 years old.

 5              THE COURT:  And today are you a citizen of the United

 6    States?

 7              THE DEFENDANT:  No, I'm not.

 8              THE COURT:  What country are you a citizen of?

 9              THE DEFENDANT:  Venezuela.

10              THE COURT:  Now, I want you to know it does not make

11    any difference what country someone happens to be a citizen of

12    because the very same rights and the same protections that

13    would apply to a citizen of the United States, they will apply

14    to you.  But when someone who is not a citizen of the United

15    States comes to court and pleads guilty to a serious crime that

16    would be classified as a felony, that's going to affect their

17    ability to remain in the United States, and that's obviously

18    very significant.  So let's put that aside, but we'll come on

19    back and talk about that afterwards.  Okay?

20              THE DEFENDANT:  Yes.

21              THE COURT:  Tell me a little bit, if you would, about

22    your educational background.  How far did you go in school?

23              THE DEFENDANT:  I graduated -- well, I went to school

24    for fine arts in New York and the School of Visual Arts.  I --

25              THE COURT:  You did that in New York?
```

```
1              THE DEFENDANT:  In New York City.

2              THE COURT:  What was the name of that school again?

3              THE DEFENDANT:  School of Visual Arts.

4              THE COURT:  Is that associated with any of the

5    universities or is it a standalone?

6              THE DEFENDANT:  A standalone school.

7              THE COURT:  And you may have done this, but how old

8    were you when you first came to the United States?

9              THE DEFENDANT:  The first time I think I was 16 years

10   old.

11             THE COURT:  Okay.  Now, before coming to the United

12   States, had you finished grammar school and high school in

13   Venezuela?

14             THE DEFENDANT:  Yes, I finished high school in

15   Venezuela.

16             THE COURT:  Did you do any college work in Venezuela?

17             THE DEFENDANT:  I did.  I went to veterinary school

18   for about three semester or so, and then I did some advertising

19   design for a few semesters as well.

20             THE COURT:  And that was in the academic setting as

21   well, a business school or something like that?

22             THE DEFENDANT:  It was kind of a technical school.

23   The school I did it in the Universidad Central de Venezuela,

24   which is like the main public university there.

25             THE COURT:  Okay.  And so in terms of your -- I assume
```

1    that you did not get a degree in veterinary medicine?

2            THE DEFENDANT:  No.

3            THE COURT:  So you took a few semesters and then moved

4    over to the more visual arts?

5            THE DEFENDANT:  Right, in advertising.

6            THE COURT:  Did you get a degree in that?

7            THE DEFENDANT:  No, I did not.

8            THE COURT:  Now, did you do any other academic work in

9    Venezuela at that time or after that?

10            THE DEFENDANT:  No, I did not.

11            THE COURT:  And then you started to say you came to

12    the United States?

13            THE DEFENDANT:  Yes.

14            THE COURT:  And attended the Visual Arts Institute in

15    New York?

16            THE DEFENDANT:  Yes.

17            THE COURT:  Did you get a degree from that?

18            THE DEFENDANT:  Oh.  Well, when I came here, then I

19    did the school of -- the Art Institute Fort Lauderdale.  I did

20    about probably three semester there, and then I went to the

21    Broward Community College.  I did a few semesters there as

22    well, and then I applied to --

23            THE COURT:  Did you get a degree from Broward

24    Community College?

25            THE DEFENDANT:  No, I did not.

1              THE COURT:  Okay.

2              THE DEFENDANT:  And then I applied to School of Visual

3    Arts.

4              THE COURT:  In New York.

5              Do they actually issue a degree when you complete

6    that?

7              THE DEFENDANT:  No, because I haven't actually got --

8    I have like nine credits to go.

9              THE COURT:  Okay.  Does that pretty well cover your

10   academic background and training?

11             THE DEFENDANT:  Yes, it does.  Well, there are other

12   courses.

13             THE COURT:  That you've done from time to time?

14             THE DEFENDANT:  Right.  Yes.

15             THE COURT:  We don't need to go way back, but tell me

16   a little bit as an adult how have you normally been employed?

17   I think from what the lawyers have represented I have the

18   impression that you have worked as an artist.

19             THE DEFENDANT:  I have worked as an artist.

20             THE COURT:  What's your field that you do in the art

21   world?

22             THE DEFENDANT:  Fine arts.

23             THE COURT:  Which means what?

24             THE DEFENDANT:  Paintings, sculptures, animations,

25   videos, performances.

```
 1              THE COURT:  That sounds like a very broad range.

 2         Do you -- have you produce paintings?

 3         THE DEFENDANT:  Yes.

 4         THE COURT:  Do you do sculptural work as well?

 5         THE DEFENDANT:  Well, not now.  I have concentrated

 6  mostly on two-dimensional work as well as the performances and

 7  video.

 8         THE COURT:  Okay.  Now, I understand obviously your

 9  academic work has all been in this direction as well.

10         Do you work as an artist --

11         THE WITNESS:  Yes.

12         THE COURT:  -- or do you have some other work and you

13  do the art on the side?

14         THE DEFENDANT:  Well, since 2002 it's been

15  increasingly more towards -- I've been generating money from my

16  visual work.

17         THE COURT:  From your artistic endeavors in the visual

18  field?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Have you held any other jobs in the last

21  ten years in any other field?

22         THE DEFENDANT:  Yes, I was an interim director for the

23  James Randi Educational Foundation of Palm Beach.

24         THE COURT:  I'm sorry.  I missed what that was.  You

25  were an interim director for what?
```

1          THE DEFENDANT:  The James Randi Educational

2   Foundation.

3          THE COURT:  What's that second word?

4          MS. DMITROVSKY:  Randi, R-A-N-D-I.  Mr. Randi is here.

5          THE COURT:  Fine.  Thank you for coming.

6          You worked as the interim director for the James Randi

7   Foundation?

8          THE DEFENDANT:  Correct.  But as a volunteer.  Not as

9   a --

10         THE COURT:  Okay right.

11         THE DEFENDANT:  And I worked there for about 12 years

12   or so.

13         THE COURT:  Now, may I ask you what your status is in

14   the United States?  Are you a resident alien or --

15         THE DEFENDANT:  No, right now I'm illegal basically.

16   I overstayed my visa.

17         THE COURT:  So, in other words, at one point you had a

18   visa that allowed you to come from Venezuela?

19         THE DEFENDANT:  Well, I was living in Italy at the

20   time, and I came --

21         THE COURT:  Where were you living in Italy?

22         THE DEFENDANT:  In Milan.

23         THE COURT:  In Milano.

24         THE DEFENDANT:  Yea.

25         THE COURT:  So then you came to the United States?

```
 1              THE DEFENDANT:  I came to the United States, and then
 2    I went to school at the school -- at the Art Institute of
 3    Fort Lauderdale, and then I overstayed.
 4              THE COURT:  Help me out in terms of just approximately
 5    when we're talking about.  How far back is that?
 6              THE DEFENDANT:  1984, I believe.  1985.
 7              THE COURT:  So A long time ago?
 8              THE DEFENDANT:  Yes.
 9              THE COURT:  If you had to go back today and say when
10    was the first time I overstayed my visa, what are we talking
11    about?  Is it back in the '80s?
12              THE DEFENDANT:  Well, that time.
13              THE COURT:  So the visa ran out and you stayed here
14    and continued to work?
15              THE DEFENDANT:  Yes.
16              THE COURT:  And you've really established yourself, I
17    would imagine, here in the United States since then?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Okay.  I need to ask you some other
20    questions about yourself, and I want you to know I'm asking you
21    these ultimately so I can make an evaluation of your ability to
22    make the judgment that you're thinking about making today, the
23    decision that you're talking about making.
24              Can you tell me, are you married today, sir?
25              THE DEFENDANT:  Well, I am in a relationship with
```

```
 1   Mr. Randi.

 2          THE COURT:  Okay.  Do you have children?

 3          THE DEFENDANT:  No, I do not.

 4          THE COURT:  Okay.  Again, a couple of other personal

 5   questions, and only so I can make this judgment.

 6          Have you ever gone to see somebody that we would

 7   describe as a mental health professional?  And by that I mean a

 8   psychiatrist, a psychologist, anybody like that because of any

 9   mental or emotional problems.

10          THE DEFENDANT:  No.

11          THE COURT:  How about using illegal drugs, have you

12   been using any illegal drugs?

13          THE DEFENDANT:  I have in the past.  Yes, I have.

14          THE COURT:  Just thinking today if you -- first, do

15   you know what the drugs?  Can you remember now what they were?

16          THE DEFENDANT:  Yes.  Marijuana and cocaine a long

17   time ago.

18          THE COURT:  Okay.  And today looking back, if you had

19   to look back and say the last time I had some cocaine or

20   marijuana, how far back are we talking?

21          THE DEFENDANT:  In the '80s.

22          THE COURT:  Okay.  A long time.

23          Let me tell you why I'm asking you this.  It's so

24   important that today, here in the courtroom, that you really be

25   clearheaded so you can listen to everything that's said so you
```

1  can evaluate this information and then you, yourself, make

2  whatever judgments you think are the correct judgments for

3  yourself.

4          Do you feel that you can do that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  May I ask you about your physical

7  health?  How would you describe your physical health today?

8          THE DEFENDANT:  I think I'm okay.

9          THE COURT:  Do you take any prescription medicine on a

10 regular basis?

11         THE DEFENDANT:  I do not.

12         THE COURT:  Good.  Okay.  Great.

13         Now, I know that we're here to talk about entering a

14 plea of guilty, but before we go too far in that direction I

15 want to stop for a minute and I would like to review with you

16 certain rights that are guaranteed to you by the United States

17 Constitution, and you really need to think of these as

18 protections that have been purposefully built into the law so

19 they would be available to you in a situation like this.

20         Number one, I need to make sure you understand what

21 they are and, second, I need to make sure you have thought

22 about the fact that if you do decide to go ahead and plead

23 guilty, one of the things you would be doing, you see, is

24 putting these rights aside, waiving them, giving them up.  And

25 when you think about it, that's what makes this such an

1   important decision today.

2         Now, the most important right is this:  When somebody

3   is accused of having violated the law, there's absolutely no

4   requirement that they come to court and say they're going to

5   plead guilty.  Under the constitution you have the absolute

6   right to say my plea is going to be not guilty, I want to have

7   a trial, and, as a matter of fact, I want 12 people to come in

8   who sit as a jury.  And it would be the jury that would listen

9   to all of the information, all of the evidence.  It would be

10   the jury that would decide the result of that trial.

11         So do you understand you have the absolute right to

12   have a trial with a jury?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  Now, do you also understand that if we did

15   have a trial in your case, that Mr. Kuehne, Ms. Dmitrovsky,

16   they would be right here by your side from beginning to end to

17   help you out in this case?

18         Do you understand that?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT:  Now, I know that Mr. Kuehne Ms. Dmitrovsky

21   are very fine lawyers and have a lot of experience, but I want

22   you to know it's so important that you be represented by

23   counsel.  If for some reason you, yourself, could not afford

24   their services, do you understand that the Court would appoint

25   a lawyer to represent you through this entire process at no

1   cost to you, yourself?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Do you understand that?

4           THE DEFENDANT:  Yes, I do.

5           THE COURT:  I want to make sure you understand the way

6   a trial works, because we say that the responsibility or the

7   obligation to bring the proof into the courtroom, that's

8   something that we place 100 percent on the shoulders of the

9   government lawyers, the prosecutor.  In other words, the person

10  who's accused of having violated the law, they don't have to

11  prove anything at the trial.  They don't have to disprove

12  anything.  You wouldn't even have to speak at the trial.

13          Do you understand that?

14          THE DEFENDANT:  Yes, I do.

15          THE COURT:  Now, of course, the way the government

16  normally tries to prove a charge is they would call witnesses.

17  So that means people would come into the courtroom one by one,

18  they come on over here to the witness stand, they take the

19  oath, and then they're questioned by the prosecutor.

20          Now, if we were to have a trial in your case, you

21  would be able to sit right over there at the defense table, you

22  could look these people in the eye and listen to whatever they

23  would have to say, you would be able to talk to your lawyer

24  about their testimony.

25          Do you understand that?

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  Do you understand that when the prosecutor

3    finished asking her questions of a particular witness, that

4    your lawyer would stand up in front of the jury and your lawyer

5    would question the witness so they could show the jury whether

6    there were any holes or any weaknesses or any inconsistencies

7    in what that witness might be saying?

8              Do you understand your lawyer would do that for you?

9              THE DEFENDANT:  Yes, I do.

10             THE COURT:  Do you also understand that your lawyers

11   have the authority to have court orders issued, subpoenas that

12   would force other people to come to the trial or have other

13   evidence brought to the trial to help you out?

14             Do you understand they could do that for you?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  Now, you remember that I said that at a

17   trial the government gets to call witnesses, and certainly you

18   would be able to call witnesses too.  But I want to make sure

19   you've thought about this.  If we did have a trial in your

20   case, you, yourself, would have the absolute right to come on

21   up to that witness stand, to take the oath, and then to explain

22   to the jury from your point of view either what happened or

23   what didn't happen in this case.

24             Do you understand you would be able to do that?

25             THE DEFENDANT:  Yes, I do.

```
 1              THE COURT:  Now, in this one area the constitution
 2   guarantees you a tremendously important choice because while
 3   you certainly could testify, if that's what you wanted to do,
 4   the constitution goes on and it says you have the right not to
 5   testify, you have the right to remain silent.  And what that
 6   means is if, for whatever reason, you decided you were not
 7   going to testify, first, I would tell the jury that was a right
 8   guaranteed to you by the constitution, and I would go a step
 9   further and I would tell the jury that when they go back to
10   deliberate to try to decide whether the government did or did
11   not prove its charges, that they could not in any way consider
12   the fact that you had not testified.
13              So do you understand you have that tremendously
14   important right, the right to remain silent and not testify?
15              Do you understand that too?
16              THE DEFENDANT:  I do.
17              THE COURT:  Now, this is probably obvious to you, but
18   let's just talk about it for a second.  Do you understand that
19   if you do decide to go ahead and plead guilty today, what
20   you're effectively doing, you see, is giving up all of these
21   rights and protections because it means we will not have a
22   trial, no jury, no witnesses, in all likelihood the next time
23   you would be present in the courtroom would be for the
24   sentencing proceeding.
25              Do you understand that too?
```

1          THE DEFENDANT:  Yes, I do, Your Honor.

2          THE COURT:  Okay.  Now, Mr. Pena, do you have a copy

3  of the plea agreement in front of you?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  If the first paragraph it says you have

6  agreed to plead guilty to what is called the crime of passport

7  fraud.

8          Is that the crime that you've agreed to plead guilty

9  to?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  Now, we say that every single crime is

12  made up of what are called elements or parts.  In other words,

13  these are specific facts that we say the government has to be

14  able to prove, and we say they've got to be able to prove them

15  beyond a reasonable doubt.  That's by a very high standard

16  before anybody could be found guilty of that crime.

17          Let me just take a minute and let's look at this crime

18  and see what it is the government would have to be able to

19  prove before you could be found guilty of this crime.  And I'm

20  going to ask the lawyers, if you would, to please correct me if

21  I leave anything out or just let me know.

22          First, the government would have to prove that you

23  knowingly and willfully made a false statement.

24          Now, "knowingly" means you really knew what you were

25  saying was not correct.  Okay?  It wasn't because of a mistake

1   or anything else.  "Willfully" means that you were doing it and

2   you understood you were violating the law by doing that.

3          Secondly, they would have to show that this false --

4   this false statement was -- by the way, I think it has to be a

5   false statement about something that would have been important.

6   Okay?

7          If you -- I'm trying to think of something.  Just a

8   typographical error or something, that doesn't have any

9   significance.  That's not what they're talking about.  It has

10  to be something that would have been important to the passport

11  office.  They have to show that this false statement was made

12  in an application for a passport or a renewal of a passport.

13         And they have to, third, show that it was made, the

14  false statement was made with the intent to induce the passport

15  office to issue the new passport.

16         Have I covered all of the elements of this crime?

17         MS. MITRANI:  Yes, Your Honor.

18         MS. DMITROVSKY:  Yes, Judge.

19         THE COURT:  Do you understand, Mr. Pena, what the

20  government would have to prove before you could be found guilty

21  of this crime?

22         THE DEFENDANT:  Yes, I do, Your Honor.

23         THE COURT:  Okay.  Now, you know, when you think about

24  this, one of the things --

25

1      (Pauline Stipes, Official Court Reporter, concluded the

2   reporting of this hearing.)

3

4                    C E R T I F I C A T E

5      I, Karl Shires, Registered Professional Reporter and

6   Federal Certified Realtime Reporter, certify that the foregoing

7   is a correct transcript from the record of proceedings in the

8   above-entitled matter.

9      Dated this 17th day of May, 2012.

10

11   _____
    Karl Shires, RPR FCRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25